B. F. SPEAK, Respondent, v. ELY & WALKER DRY GOODS COMPANY, Appellant.

St. Louis Court of Appeals, May 4, 1886.

1. INSTRUCTONS—CONVERSION.—It is error to submit to the jury the question whether the defendant "unlawfully converted" the plaintiff's goods to his own use.

2. ――― The only case in which such an error will not work a reversal is, where the question of law submitted is an abstract proposition not relevant to the issue, or where the verdict is manifestly for the right party.

3. APPELLATE PRACTICE.—Where the record contains no substantia evidence to support the allegations of the petition, a judgment for the plaintiff will be reversed, but the cause will not be remanded.

APPEAL from the Cape Girardeau Court of Common Pleas, ROBERT L. WILSON, Judge.

*Reversed.*

WILLIAM B. THOMPSON, for the appellant.

THOMPSON, J., delivered the opinion of the court.

The theory on which this case was tried will appear by the two instructions on which the court put it to the jury. The first was requested by the plaintiff, and was as follows: "The court instructs you that if you believe from the evidence that the defendant unlawfully took and converted to its own use the property of plaintiff described in the petition, you should find for the plaintiff and assess his damages at the reasonable market value of such goods at the place and time the conversion took place, with six per cent. interest from the date of conversion." The second was given at the request of the defendant, and was as follows: "The court instructs the jury that if they believe from the evidence that the plaintiff and defendant, through one of its members, did,

in the month of April, 1884, make an agreement, whereby plaintiff was to deliver to defendant the goods in controversy, and that plaintiff agreed to take therefore the sum of eight hundred and forty-one dollars, to be entered as a credit on three notes held by defendant against plaintiff, and if they further believe that said goods were delivered by plaintiff and received by defendant, according to said agreement, and that the said sum of eight hundred and forty-one dollars was credited by defendant upon said notes, then the jury will find for the defendant." As the jury found for the plaintiff in the sum of five hundred dollars, they must have found the existence of the state of facts on which the former of the above instructions was predicated.

What is an unlawful conversion is a question of law where the facts are found or conceded. In instructing a jury it is error for the court to submit questions of law to them for their determination. *Fugate v. Carter*, 6 Mo. 267, 273 ; *Hickey v. Ryan*, 15 Mo. 63, 67. The only case in which such an error will not work a reversal of the judgment is where the question of law is what is called an abstract proposition not relevant to any evidence in the case, and, therefore, immaterial and harmless, or where the jury have manifestly decided the question rightly. In the above instruction, which is not based upon any hypothetical state of facts disclosed by the evidence, the court submitted to the jury the naked question of law, whether the defendant had or had not been guilty of an unlawful conversion of the plaintiff's goods ; and as it is not manifest that the jury had decided the question rightly, but manifest that they had decided it wrongly, this is sufficient, without more, to require a reversal of the judgment.

In finding for the plaintiff the jury must have found in favor of the hypothesis embraced in the former of the above instructions. We can discover no substantial evidence in the record to support such an hypothesis. The petition is drawn upon the theory of recovering damages for the fraudulent conversion of the plaintiff's

goods. It recites, in substance, that the plaintiff was indebted to the defendant in the sum of $1,040, and agreed with the defendant that the defendant might take out of the plaintiff's place of business goods enough to satisfy this indebtedness, at their full value, and no more ; that, contrary to this agreement and without the knowledge or consent of the plaintiff, the defendant fraudulently took out of the plaintiff's store-house a quantity of goods largely in excess of what was sufficient to satisfy the above indebtedness and carried them off and converted them to its own use. The answer, after a general denial, states the fact of the indebtedness of the plaintiff to the defendant in a sum of $1,041, and charges that it was agreed between the plaintiff and the defendant that the plaintiff should turn over the dry goods in his store in payment of this indebtedness ; that an inventory was taken, after which the defendant offered to take the goods at the price of eight hundred and forty-one dollars, and credit the notes of the plaintiff, held by the defendant with this amount, which offer the plaintiff accepted, and that the goods were taken with the full knowledge and consent of the plaintiff in pursuance of this agreement.

The plaintiff gave evidence to the effect that the defendant having demanded payment or security for the debt which the plaintiff owed the defendant, which demand the plaintiff could not comply with, it was agreed between the plaintiff and the defendant that the defendant was to take its pay in goods out of the plaintiff's store, allowing the plaintiff dollar for dollar for them ; that, in pursuance of this agreement the plaintiff and the defendant's agent went to the plaintiff's store and took an inventory of a part of the stock of goods there found ; that the defendant's agent kept the slips on which the stock was taken and carried the goods off to St. Louis ; that the defendant did not give the plaintiff an inventory of the goods, as promised, and that the plaintiff was "surprised" when he learned, through the defendant's attorney, that the defendant had given him credit only for

the sum of eight hundred and forty-one dollars on his notes held by the defendant. The defendant's agent, who, with the plaintiff, took the inventory, testified positively that after the inventory was taken it was agreed between him and the plaintiff that the defendant would take the goods at the price of eight hundred and forty-one dollars, and allow him a credit upon his indebtedness to that amount. One of the defendant's attorneys testified that he was present at the plaintiff's house on the day after the inventory had been taken by the plaintiff and the defendant's agent, and heard the agreement between the plaintiff and the defendant's agent, that the defendant was to be allowed to take the goods at the price of eight hundred and forty-one dollars, and to credit the plaintiff upon the notes, which were in the hands of the defendant's attorneys for collection, with that amount; that at that interview the defendant's agent directed the witness to credit the notes with the amount named; that the witness asked the plaintiff if that was the agreement, and the plaintiff replied that it was. The plaintiff offered no evidence which tended to countervail or rebut this positive testimony as to the nature of the agreement. When cross-examined as a witness, he said: "I remember Mr. Davis (defendant's attorney) calling with Mr. Janis (defendant's agent) on his way to the depot. Janis bid me good-bye, but I *don't remember* his saying anything about giving me credit for eight hundred and forty-one dollars. He said nothing about goods or their value, *so far as I remember*. He said a great deal, and *I can't remember all he said.* * * * When Davis returned me two of the notes, I asked him for the other one, and I was surprised that I was to have credit for only eight hundred and forty-one dollars, when he told me so. Davis told me they had credited me with eight hundred and forty-one dollars, and I *made no objection* to it, and took the two notes which were paid in full." In addition to this, the uncontradicted evidence showed that the

plaintiff assented to the whole arrangement; that he assisted throughout in taking the inventory; handed down the goods to the agent of the defendant, piece by piece; knew from the beginning to the end what the defendant carried off, never made any objection to it, and, as appears from his testimony above quoted, assented to the amount of the credit of eight hundred and forty-one dollars, after it had been given. In all this evidence there was nothing to show a right on the part of the plaintiff to any relief against the defendant, unless the courts of law sit to relieve persons from their own contracts when they conceive that they have made a bad bargain, or that if they had held out they might have made a little better bargain.

It is unnecessary to make any further observations upon the rulings of the court; but, as the petition charges a firm of reputable merchants with fraudulent and oppressive conduct toward a debtor who is alleged to have been sick at the time, it is proper to say that upon the whole evidence this charge is entirely disproved. The goods were taken by the defendant to St. Louis, and bids were invited for the lot; one dealer bid less than five hundred dollars, two dealers bid five hundred dollars, and the only other dealer who could be induced to bid for them bid $720.05, and they were sold to him for that amount. Considering that the defendant assumed the charge of shipping the goods from Cape Girardeau to St. Louis, including the cost of insurance, it appears that it sustained a very considerable loss by the transaction.

The judgment will be reversed. The plaintiff has had his day in court, has failed to make out a case or to offer any evidence in contradiction of the evidence of the defendant, which is clear, consistent, and entirely probable, and which shows that the plaintiff has no case. It does not, therefore, appear that the ends of justice will be served by remanding the cause. The judgment will be reversed merely. It is so ordered. All the judges concur.