MAGDALENA STROTTMAN, Appellant, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

In Banc, May 13, 1910.

1. **NEW SUIT AFTER REVERSAL: Within One Year: Section 2868.** Where the appellate court has passed upon both the law and the facts of a suit for damages for personal injuries, and reversed the judgment without remanding the cause, the plaintiff cannot bring and maintain a new suit, even if brought within the year specified in section 2868, Revised Statutes 1899, as amended in 1905, which provides that "every action instituted by virtue of the preceding sections of this statute shall be commenced within one year after the cause of such action shall accrue; Provided, that if any action shall have been commenced within the time prescribed in this section, and . . . after a verdict for him, the same be reversed on appeal or error, such plaintiff may commence a new action . . . within one year after . . . such judgment is reversed." The word "reversed," as used in this statute and in section 4285, should be construed to mean a reversal in a case wherein the merits of the cause have not been adjudicated.

2. ———: **Equivalent to a Nonsuit: Finality.** A judgment of reversal in the appellate court is not, in all cases, equivalent to a judgment of nonsuit, either voluntary or involuntary. A nonsuit must be taken before the cause is submitted to the jury or to the court; a judgment of reversal comes after submission. Where upon appeal the court examines the facts and applies the law, and reverses the judgment for the reason that plaintiff upon the merits is not entitled to recover, such judgment of reversal is a finality, and a new suit upon the same cause of action cannot thereafter be maintained. If the merits of the case are adjudicated and passed upon, a judgment of reversal is final; if not, it is not necessarily final.

3. ———: ———: **New Suit Within One Year: Facts in Judgment.** Plaintiff, a widow of an engineer in the employ of a railroad company, brought suit for the negligent killing of her husband, the negligence charged being the failure of a telegraph operator to deliver a train dispatcher's message, through which failure a collision of trains occurred, and plaintiff's husband was killed. She recovered judgment in the trial court, and on appeal it was held that the deceased engineer and the telegraph

operator were fellow-servants, and that under the statute as it then was the widow could not maintain an action for damages for the death of her husband due to the negligence of a fellow-servant, and the judgment was reversed, and within one year plaintiff instituted this suit, relying upon the same facts adjudicated in the former case. *Held,* that the judgment of reversal in the former case was a finality, and this suit cannot be maintained.

4. ———: New Facts: Timely Motion. Where a judgment for plaintiff, after an adjudication on the merits, is simply reversed, plaintiff's course, if he desires a new trial, is to file a timely motion in the appellate court asking that the cause be remanded and a new trial awarded him because of new facts he may be able to develop upon such new trial.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. C. Hitchcock,* Judge.

AFFIRMED.

*Block & Sullivan* for appellant.

(1)   Under the present statute, the prior reversal saves the action from the special Statute of Limitations applicable to this class of causes.   Clark v. Railroad, 219 Mo. 524.   (2) Counsel for respondent contend that the judgment of reversal in the former case is *res adjudicata* in this.   A few words on the subject from our side of the controversy may not be amiss. A decision of this court, as of any other court of last resort, may be controlling from three possible aspects: First, as *res adjudicata,* or a final judgment of a court of competent jurisdiction on the merits of a controversy; second, as "the law of the case;" and, third, as "the law of the land," or a controlling precedent. As "the law of the land," the prior opinion is of course to be followed or overruled according as the court shall be satisfied with its pronouncements, or otherwise. As "the law of the case," the result of the adjudications is that if error was committed, the fact that the question again arises between the same parties liti-

gant does not at all interfere with the correction of the error. Regardless of its merits, however, counsel bring it forward as a final judgment which bars all further controversy. This, be it known, must deal with the judgment and not the opinion of the court. It is the opinion of the court, of course, which is concerned when the question is "the law of the case" or "the law of the land;" but it is the judgment of the court, and not the opinion which led to the judgment, which must control when the question is *res adjudicata*. The question, therefore, is whether a judgment of reversal simply is a final judgment which will bar another action. The distinction to be drawn here is between those judgments which put an end to the case merely, and those judgments which put an end both to the case and to the controversy involved. To constitute *res adjudicata,* a judgment must end not only the case, but the controversy involved as well. For instance, a dismissal for want of prosecution, for lack of security for costs, for lack of proper venue, or for want of jurisdiction puts an end to the case, but is without effect on the controversy. What of a judgment of reversal? The decisions bearing directly on the question are these: This court reversed, without remanding, Robinson v. Musser, 73 Mo. 153, a *causa celebris,* and pronounced judgment against the plaintiff for all costs of the cause. Musser v. Howard, 23 Mo. App. 495, was an action on the cost bond in the Robinson case. It is manifest that a final judgment on the controversy was not essential to a recovery on the cost bond; but any final termination of the particular case would suffice, whether disposing of the merit of the controversy or otherwise. Thus, a nonsuit or dismissal leaving the merits untouched, would have been a final judgment so far as concerns an action on the cost bond. In the course of the opinion of the Kansas City Court of Appeals in that case, written by HALL, J., is found a dictum that a judgment of reversal without remand-

ing would bar another action, but the question was not before him for consideration. Zurfluh v. People's Co., 46 Mo. App. 643, is the opinion of the St. Louis Court of Appeals, then composed of THOMPSON, ROMBAUER and BIGGS, JJ. These judges were unanimously of the view that a reversal without remanding is not an adjudication of the merits, but is equivalent to a non-suit by the plaintiff. The same ruling was repeated by that court in Berning v. Medart, 56 Mo. App. 450, in an opinion by ROMBAUER, J., concurred in by BOND and BIGGS, JJ. The question came squarely before the Kansas City Court of Appeals for adjudication in Stevens Co. v. Kansas Co., 72 Mo. App. 258. That court overruled the dictum in Musser v. Howard, supra, and announced the same conclusion as that arrived at by the sister court of appeals. In Young v. Thrasher, 123 Mo. 312, was involved the effect of a judgment reversing and remanding the cause to the trial court with directions to enter judgment. In the course of the opinion, MACFARLANE, J., referred with approval to the case of Smith v. Adams, 130 U. S. 177. In that case, Mr. Justice FIELD, writing the opinion of the Supreme Court of the United States, said this, pertinent to the subject here being investigated: "A judgment of reversal is only final when it also enters or directs the entry of a judgment which disposes of the case." In Stone v. United Workmen, 117 Mo. App. 297, the Kansas City Court of Appeals reaffirmed the rule declared in Stevens Co. v. Kansas, supra, the opinion being written by BROADDUS, J., and concurred in by ELLISON and JOHNSON, JJ. Notwithstanding the laborious efforts of counsel to distinguish the case of Donnell v. Wright, 199 Mo. 312, that adjudication, in our judgment, is sufficient to dispose of this question contrary to the position taken by respondent. Donnell v. Wright, 147 Mo. 646, was reversed without remanding. After that transpired, an effort was made to proceed with the case in the court below, and that effort reached

this court by appeal and was disposed of in 199 Mo. 312. It was held that the appeal of the case put an end to jurisdiction of the trial court and that its jurisdiction to proceed could only be revived by an order remanding the case from this court. So far, however, from holding a reversal without remanding to be a final judgment, this court expressly held the other way and approved the opinion of the Kansas City Court of Appeals to that effect. As said in that case, this court may, first, affirm; second, reverse; third, reverse and remand for a new trial; fourth, reverse with directions to enter a particular judgment; and, fifth, enter such judgment here as the trial court should have entered. Either of these judgments may be accompanied by an opinion on the merits of the controversy. If that controversy, or any other similar one, should again come before the court, that opinion would be accepted as the law unless overruled; but whether these various judgments are accompanied with an opinion on the merits or not has no weight in determining the proper effect to be attributed to the judgment pronounced. It is to be observed that the statute has expressly conferred upon the court the power to "reverse," and also to enter such judgment as the court below should have entered. If, as is contended here, a reversal simply is equivalent to a final judgment on the merits in behalf of the defendant, then the statute is guilty of tautology in conferring power upon the court to reverse, and also an independent power to enter such judgment as the circuit court should have entered. If this interpretation should be adopted, then there was no occasion for the use of the word "reverse" in the statute; since all that it would then signify is included within the direction that such judgment may be entered as the court below should have given. Moreover, it certainly is true that the law-makers have the right to say what shall be the effect of a judgment of reversal in this court, and if that body has said that such a

judgment shall leave the controversy open for further litigation, that is an end of this discussion. Section 4285, R. S. 1899, has been the law in this State for a long time. Among other things it provides that if the plaintiff begin his action within the time fixed by the proper Statute of Limitations and recover a judgment and "the same be reversed" he may begin a new action within one year after the judgment is "reversed." Note that the language of this statute is not "if the judgment be reversed and the cause remanded," but "if the judgment be reversed" simply. A provision for a new action in case a judgment is reversed and the cause remanded would be superfluous, because under such conditions the plaintiff can proceed with his controversy in the same case without the consent of this statute and without any hindrance from the Statute of Limitations. A recent Legislature has extended this statute in the same language to actions of the character here being investigated. R. S. 1899, sec. 2868 (Laws 1905, p. 138). In passing on the first statute above quoted, NORTON, J., delivering the judgment of this court in Bryant v. Fudge, 63 Mo. 491, said: "It would seem to follow from the above that on the arrest or reversal of the judgment rendered in the suit of Dale against the defendant, another suit might have been brought on the same cause of action within one year after the arrest or reversal even although ten years had elapsed." In Estes v. Fry, 166 Mo. 81, MARSHALL, J., delivering the judgment of the court, said, concerning the application of sec. 4285, R. S. 1899, this: "The one year here allowed means one year after the judgment is entered for a nonsuit, in arrest, or for a reversal, and this is true, whether such judgment is entered in the trial or appellate court." This language was quoted with express approval by WOODSON, J., delivering the opinion in Mason v. Kansas Co. The court must determine that these two statutes are entirely meaningless in order to follow counsel in the

conclusion that a judgment of reversal without more constitutes a final judgment on the merits of the controversy. It is well settled that the judgment of an appellate court, not final in form, is not *res adjudicata*, even though accompanied by an opinion on the ultimate merit of the controversy. This principle is illustrated by Hennessy v. Bavarian Co., 63 Mo. App. 111, 145 Mo. 109. In that case a mother sought to recover damages for the death of her minor child. The father was dead and the mother had remarried. A judgment having been entered for the plaintiff in the trial court, the defendant appealed to the Kansas City Court of Appeals, and that court held that the stepfather stood *in loco parentis* to the child and therefore the mother could not recover. The judgment of the lower court was reversed and the cause remanded. At the next trial, the plaintiff was nonsuited and brought the case to this court where it was held that the judgment of the court of appeals was not *res adjudicata*. Bucher v. Cheshire Co., 125 U. S. 555; Gardiner v. Railroad, 150 U. S. 349; Coal Co. v. Patting, 210 Ill. 346; Railroad v. Benz, 108 Tenn. 670; Holland v. Hatch, 15 O. St. 465; Gibbs v. Haughowout, 207 Mo. 391. In Donnell v. Wright, the court was dealing with a final judgment rendered here, such as this court conceived the lower court should have rendered in an equity case, and not a simple reversal of a law case without remanding it. Counsel also cite Judge BARCLAY's language in Carroll v. Interstate Co., 107 Mo. 665. The learned judge in that case appears to have been in the minority and all his associates of a different opinion. Even he did not express the view that a reversal without remanding would end the merits of the controversy, but merely expressed the fear that it might do so. He did not attempt to determine the question, and indeed it was not before him for determination. All of the other members of the court appear to have been of the contrary opinion. These cases from other jurisdictions

hold that a reversal without remanding is no bar to the prosecution of a new action for the same cause. The Pennsylvania decision explains the reason for the rule quite clearly. Spies v. Boggs, 204 Pa. St. 506; McOmber v. Chapman, 42 Mich. 117; Coffin v. Cottle, 16 Pick. 383; Wooster v. Railroad, 71 N. Y. 473.

*J. F. Green* and *R. T. Railey* for respondent.

(1) The court in Banc in the former hearing of this cause fully considered the law and all the facts connected with the case (211 Mo. 227). It reached the conclusion that plaintiff's husband was killed on account of the negligence of a fellow-servant, and that plaintiff could not maintain an action against defendant based upon his death. The cause was thereupon reversed without remanding. The judgment of reversal has become *res adjudicata*, not only as to everything which was actually decided by the court, but as to everything which could have been presented and determined under the issues in said cause: Summet v. Realty Co., 208 Mo. 512 (Woodson, J.); Spratt v. Early, 199 Mo. 501 (Graves, J.); Donnell v. Wright, 199 Mo. 304 (Lamm, J.); Caldwell v. White, 77 Mo. 471 (Norton, J.); Railroad v. Traube, 59 Mo. 355 (Napton, J.); Shelbina Assn. v. Parker, 58 Mo. 327 (Sherwood, J.); Railroad v. Levy, 17 Mo. App. 507 (Philips, P. J.); Jones v. Silver, 97 Mo. App. 240 (Bland, P. J.); Ogden v. Railroad, 131 Mo. App. 336 (Broaddus, P. J.). (2) Section 866, R. S. 1899 (as amended by Laws 1903, p. 105), reads as follows: "The Supreme Court, St. Louis Court of Appeals and Kansas City Court of Appeals, in appeals or writs of error, shall examine the record and award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given, as to them shall seem agreeable to law." In Kinealy v. Macklin, 67 Mo. 98, this court said:

"This court is in the constant exercise of the powers above noted, and, in their exercise, it may simply affirm a judgment, give such judgment as ought to have been given, enter a modified judgment, reverse the judgment, reverse the judgment and remand the cause, or reverse and remand with directions to the lower court to enter a specified judgment, so that it will be readily seen that aside from judgments simply of reversal or affirmance, a wide latitude of discretion belongs to this court in its disposal of causes." Section 44, chap. 128, R. S. 1855, reads as follows: "The plaintiff. shall be allowed to dismiss his suit, or take a. nonsuit, at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court." This section was afterwards amended, and in the General Statutes of 1865, at page 662, under chapter 165, it is known as section 47, and reads as follows: "The plaintiff shall be allowed to dismiss his suit, or take a nonsuit, at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterward." This section, thus amended, was known as section 3556, R. S. 1879, as section 2084, R. S. 1889, and as section 639, R. S. 1899. Section 639 has been a part of the Code of Civil Procedure in this State during all the period aforesaid. It is plain from the provisions of the foregoing section that, after a cause has been submitted to the court for its decision and the latter has acted thereon, the plaintiff is not entitled to a nonsuit, but it is the duty of the court to proceed and enter a proper judgment in the case. At an early date, to-wit, in 1855, before the amendment above referred to, the case of Hesse v. Ins. Co., 21 Mo. 96, involving the construction of the above statute of nonsuit, came before this court. Judge Scott, in discussing the statute as it then stood, used this language: "As this was a case properly triable by a jury, the submission to the court did not vary the rule applica-

ble to nonsuits. The statute prescribes that, after a
cause shall have been finally submitted to a court for
its decision, the plaintiff shall not be permitted to take
a nonsuit. This cause was finally submitted to the
court, and its decision made known before the party
offered to take a nonsuit, and therefore it was properly
refused.'' The same statute came up for review again
before this court, in the case of Lawyers' Co-op. Pub.
Co. v. Gordon, 173 Mo. 139. Judge MARSHALL, speak-
ing in behalf of this court, concluded the opinion, in
which all concurred, as follows: ''It follows that the
trial court erred in sustaining the motion for a new
trial and in permitting the plaintiff to take a nonsuit
after the whole case had been submitted and after the
court had announced its verdict and judgment, and
therefore its order in that regard is reversed and the
cause remanded with directions to set aside the order
sustaining the motion for a new trial and allowing the
plaintiff to take a nonsuit, and to overrule said motion
and to reinstate the finding and judgment heretofore
entered by it in favor of the defendant.'' Judge MAR-
SHALL in the above cause construed the statute of non-
suit heretofore quoted, and, after reviewing many au-
thorities sustaining the conclusions reached, used this
language: ''By a parity of reasoning, the right to take
a nonsuit in a case tried before the court without a
jury should be limited to the time previous to the
court taking the case under advisement, for the pur-
pose of deciding it.'' In the case at bar, in the former
litigation the judgment of the trial court was in favor
of the plaintiff. After the cause came to this court
and before issue had been joined, she had the right
to take a voluntary nonsuit or to dismiss her cause
and commence the action over again within one year,
if the statute authorized her to sue within a year at
that time. Having joined issue, however, with the
defendant, and the cause having been submitted to this
court upon the abstract of the record and upon the

elaborate briefs filed by both sides, the plaintiff could not thereafter have taken a nonsuit or dismissed her cause under any condition except by consent. Respondent insists that, as the cause was submitted to this court in the former litigation and passed upon by it (211 Mo. 227), final judgment was entered in its behalf which precluded a right of recovery on the same cause of action. It is conceded in appellant's brief that the case is here again upon the same petition and on the same facts which were presented at the former trial. It is likewise conceded that this court, in the former trial, held that plaintiff was not entitled to maintain this action against the defendant. The case, therefore, was submitted to this court for its determination at the former hearing, and a full and complete decision made as to all the questions involved both as to the law and as to the facts. If the present action can be maintained, then the statute of nonsuit would be of no avail. The authorities hereafter referred to, upon which appellant will seek to rely, announce the principle of law to be that in cases of this character, where the cause is reversed outright without remanding, the reversal is considered equivalent to a nonsuit in the cause. This theory or position is untenable. If plaintiff, after a judgment in her behalf in the court below, cannot take a nonsuit in the Supreme Court after the case has been submitted to the latter, then by parity of reasoning, the reversal of the judgment below by the Supreme Court cannot be considered as a nonsuit in behalf of plaintiff. In other words, it was the duty of the court, after the case was submitted to it upon the merits, to pass upon the rights of the parties, as it did do, and to finally determine the issues involved therein. This court, from its foundation to the present time has proceeded upon the theory that there was no practical difference between reversing a case outright on the merits and reversing the same and entering judgment in this court for the defendant. (a) In the following cases

this court, after considering fully all the facts and the
law in reference thereto, reversed each case and entered
judgment for the respective defendants, to-wit: Gilke-
son v. Railroad, 222 Mo. 173 (Woodson, J.); Hedrick
v. Railroad, 195 Mo. 104 (Gantt, J.); Hehl v. Guion,
155 Mo. 76 (Valliant, J.); Payne v. Railroad, 136 Mo.
562 (Sherwood, J.); Barton v. Vanzant, 1 Mo. 193 (Mc-
Girk, P. J.); Rocheblave v. Potter, 1 Mo. 565 (Wash,
J.). In all of the above cases this court reviewed the
facts and fully considered the law in respect to same.
We are informed by the clerk of this court that the
judgment entered in the foregoing cases is the same in
form as that entered in said court in all cases where
there is a direct reversal on the merits without re-
manding the cause.   (B) In the following cases this
court reversed the causes, with instructions to the
lower court in each instance to enter judgment for the
defendant, to-wit:  Naylor v. Harrisonville, 207 Mo.
353 (Woodson, J.); Hager v. Railroad, 207 Mo. 317
(Graves, J.); Strode v. Railroad, 197 Mo. 633 (Graves,
J.); Markowitz v. Railroad, 186 Mo. 360; Lawyers' Co-
op. Pub. Co. v. Gordon, 173 Mo. 152 (Marshall, J.);
Holmes v. Brandenbaugh, 172 Mo. 66 (Marshall, J.);
Graney v. Railroad, 157 Mo. 685 (Sherwood, J.);
Bartley v. Railroad, 148 Mo. 143 (Marshall, J.); Na-
than v. Railroad, 135 Mo. App. 50 (Ellison, J.).  (C.)
We likewise call attention to the following cases in
this State in which this court reversed the respective
judgments in favor of the respective plaintiffs, and em-
phasized its action in each instance by refusing to re-
mand the cause for a retrial, to-wit: Matz v. Rail-
road, 217 Mo. 280 (Graves, J.); Milton v. Railroad,
193 Mo. 60 (Marshall, J.); Clark v. Railroad, 179 Mo.
94 (Marshall, J.); Sykes v. Railroad, 178 Mo. 715
(Marshall, J.); Neville v. Railroad, 158 Mo. 318 (Mar-
shall, J.); Jackson v. Railroad, 157 Mo. 646 (Burgess,
J.); Culbertson v. Railroad, 140 Mo. 64 (Gantt, J.);
State v. Caldwell, 124 Mo. 513 (Sherwood, J.); Yarnell

v. Railroad, 113 Mo. 580 (Sherwood, J.); Maxey v. Railroad, 113 Mo. 12 (Sherwood, J.); Carroll v. Railroad, 107 Mo. 664 (Barclay, J.); Jackson v. Railroad, 104 Mo. 459 (Black, J.); Barker v. Railroad, 98 Mo. 55 (Black, J.); Powell v. Railroad, 76 Mo. 85 (Sherwood, J.); James v. Railroad, 69 Mo. App. 440 (Biggs, J.). (D.) In the following prominent and leading cases, after this court had reviewed all the facts as well as the law in respect to same, judgments of absolute reversal were entered in each case upon the theory that the respective plaintiffs were not entitled to recover, to-wit: Riggs v. Railroad, 216 Mo. 335 (Lamm, J.); Strack v. Railroad, 216 Mo. 616 (Valliant, J.); Holland v. Railroad, 210 Mo. 351 (Burgess, J.); Canepa v. Railroad, 209 Mo. 198 (Burgess, J.); Beebe v. Railroad, 206 Mo. 444 (Burgess, J.); Brockschmidt v. Railroad, 205 Mo. 449 (Fox, J.); Cahill v. Railroad, 205 Mo. 411 (Burgess, J.); Stotler v. Railroad, 204 Mo. 642 (Fox, J.); Eliot v. Railroad, 204 Mo. 19 (Burgess, J.); Hagerman v. Railroad, 202 Mo. 267 (Fox, J.); McGinnis v. Railroad, 200 Mo. 363 (Graves, J.); Porter v. Railroad, 199 Mo. 100 (Burgess, J.); Rowen v. Railroad, 198 Mo. 663 (Fox, J.); Lennon v. Railroad, 198 Mo. 527 (Gantt, J.); Gilpin v. Railroad, 197 Mo. 327 (Valliant, J.); Hafner v. Railroad, 197 Mo. 202 (Valliant, J.); O'Donnell v. Railroad, 197 Mo. 123 (Valliant, J.); McGrath v. Railroad, 197 Mo. 109 (Graves, J.); Sanguinette v. Railroad, 196 Mo. 498 (Burgess, J.); Chicago Herald Co. v. Bryan, 195 Mo. 597 (Gantt, J.); State ex rel. v. Railroad, 195 Mo. 250 (Marshall, J.); Hornstein v. Railroad, 195 Mo. 460 (Marshall, J.); Chrismer v. Bell Tel. Co., 194 Mo. 214 (Lamm, J.); Walker v. Railroad, 193 Mo. 484 (Lamm, J.); Green v. Railroad, 192 Mo. 143 (Valliant, J.); Schmidt v. Railroad, 191 Mo. 236 (Gantt, J.); Seibert v. Railroad, 188 Mo. 674 (Marshall, J.); Carey v. Kansas City, 187 Mo. 738 (Fox, J.); Evans v. Railroad, 178 Mo. 517 (Burgess, J.); Carrier v. Railroad, 175 Mo. 486 (Bur-

gess, J.); Guyer v. Railroad, 174 Mo. 351 (Valliant, J.); Van Bach v. Railroad, 171 Mo. 348 (Valliant, J.); Sharp v. Railroad, 161 Mo. 237 (Brace, J.); Tanner v. Railroad, 161 Mo. 512 (Brace, J.); Davies v. Railroad, 159 Mo. 9 (Robinson, J.); Kreis v. Railroad, 148 Mo. 334 (Sherwood, J.), in Banc; Huggart v. Railroad, 134 Mo. 680 (Gantt, J.); Sinclair v. Railroad, 133 Mo. 245 (Macfarlane, J.); Hite v. Railroad, 130 Mo. 140 (Burgess, J.); Kelsay v. Railroad, 129 Mo. 376 (Macfarlane, J.); Loring v. Railroad, 128 Mo. 361 (Gantt, J.); Scarritt v. Railroad, 127 Mo. 304 (Sherwood, J.); Reichenbach v. Ellerbe, 115 Mo. 596 (Brace, J.); Thomas v. Railroad, 109 Mo. 208 (Sherwood, J.), in Banc; Perkins v. Railroad, 103 Mo. 59 (Black, J.); Robinson v. Musser, 78 Mo. 163 (Sherwood, J.); Proctor v. Railroad, 64 Mo. 126 (Norton, J.); Eddy v. Heath, 31 Mo. 146 (Scott, J.); Crohn v. Tel. Co., 131 Mo. App. 322 (Johnson, J.); W. D. B. A. Store Co. v. Sanders, 125 S. W. (Mo. App.) 517 (Nixon, J.); Van Camp v. Railroad, 125 S. W. (Mo. App.) 531 (Ellison, J.); Bentley v. Tel. Co., 125 S. W. (Mo. App.) 534 (Johnson, J.); Brannock v. Magoon, 125 S. W. (Mo. App.) 536 (Broaddus, J.); Wilkerson v. Railroad, 124 S. W. (Mo. App.) 543 (Nixon, P. J.). (3) This court, in no uncertain language, has heretofore conclusively held that a judgment of reversal, in a case where the merits have been passed upon and where it has been decided that the plaintiff is not entitled to recover, is *res adjudicata*, and the plaintiff is not entitled to have the cause remanded in order to sue again. In other words, this court, in the following cases, has refused to recognize an absolute reversal as equivalent to a nonsuit. Carroll v. Railroad, 107 Mo. 664 (Barclay, J.); Rutledge v. Railroad, 123 Mo. 137 (Barclay, J.); Keown v. Railroad, 141 Mo. 96 (Barclay, J.); Donnell v. Wright, 147 Mo. 647 (Brace, J.); Lawyers' Co-op. Pub. Co. v. Gordon, 173 Mo. 152 (Marshall, J.). When the statute was first enacted in 1807, authorizing the tak-

ing of a nonsuit at any time before the case was submitted to the jury or the court sitting as a jury, it did not say, in direct terms, that a nonsuit could not be taken thereafter. It is evident that some litigants, or their attorneys, seized upon this language and attempted to take nonsuits after the causes had been submitted. The Legislature, therefore, amended the law of 1807, as now shown by R. S. 1899, sec. 639, so as to make said section read: "The plaintiff shall be allowed to dismiss his suit or take a nonsuit, at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not thereafter." (4) In order that this court may settle for all time to come the construction to be placed upon a direct reversal of a cause, without remanding, where all the facts have been considered and passed upon, we will call attention to the cases in this State in which it has been held or intimated that an absolute reversal, under the above conditions, is equivalent to a nonsuit, to-wit: Lumber Co. v. Lumber Co., 72 Mo. App. 248; Berning v. Medart, 56 Mo. App. 443; Zurfluh v. Railroad, 46 Mo. App. 636; Briant v. Fudge, 63 Mo. 489; Shaw v. Pershing, 57 Mo. 416; Houts v. Shepherd, 79 Mo. 141; State v. O'Gorman, 75 Mo. 371; Stone v. United Workmen, 117 Mo. App. 295; State ex rel. v. Lodge, 78 Mo. App. 546; Donnell v. Wright, 199 Mo. 304.

GRAVES, J.—This cause is here for a second time. There was at least an attempted adjudication of it in Strottman v. Railway Co., 211 Mo. 227. We have purposely used the word "cause" instead of the word "case." The cause when first here came by appeal from Jefferson county. Plaintiff, the widow of an engineer in the employ of defendant, sues for the alleged negligent killing of her husband. The negligence charged was the failure of a telegraph operator to deliver a train dispatcher's message, through which

failure a collision occurred and plaintiff's husband was killed. When that case came on for hearing in this court, by a majority opinion it was held that the deceased engineer and telegraph operator were fellow-servants under the Act of 1897, but it was further held that such Act of 1897 did not give the widow a right of action. This court upon an examination and hearing upon both the facts and the law entered a simple judgment of reversal, in words as follows:

"Now at this day come again the parties aforesaid, by their respective attorneys, and the court here being now sufficiently advised of and concerning the premises, doth consider and adjudge that the judgment aforesaid, in the form aforesaid, by the said Jefferson County Circuit Court rendered, be reversed, annulled and for naught held and esteemed, and that the said appellant be restored to all things which it has lost by reason of the said judgment. It is further considered and adjudged by the court that the said appellant recover against the said respondent its costs and charges herein expended, and have execution therefor. (Opinion filed.)"

The present case was instituted in the circuit court of the city of St. Louis by a petition containing two counts. The two counts are the same, save, except on the second there is an allegation of wanton and willful negligence and a prayer for punitive as well as other damages. In this count actual damages for $5000 and additional punitive damages are claimed. Both counts of said petition contain the following allegations:

"Within six months next after said accident, injury and death of the plaintiff's husband, she brought her action against the defendant in the circuit court of Jefferson county to recover damages therefor, and to recover upon the cause of action sued for herein, and subsequently, on May 14, 1903, recovered a judgment against the defendant therein, and said cause was

thereupon taken by the defendant to the Supreme Court of Missouri, on appeal and said judgment was by the Supreme Court of Missouri on the second day of April, 1908, reversed. To the damage of the plaintiff in the sum of five thousand dollars, for which she prays judgment.''

Other allegations in the two respective counts of the petition were such in substance as are found in the petition when the cause was formerly here.

To this petition, the defendant filed a demurrer in this language:

''Now comes the defendant in the above entitled cause and demurs to the first count of the amended petition filed therein for the reasons following:

''First. Because said first count of said amended petition fails to state facts sufficient to constitute a cause of action against this defendant.

''Second. Because it appears on the face of said first count that plaintiff has no cause of action against this defendant.

''And, defendant demurs to the second count of said amended petition for the reasons following:

''First. Because said second count of said amended petition fails to state facts sufficient to constitute a cause of action against this defendant.

''Second. Because it appears on the face of said second count that plaintiff has no cause of action against this defendant.''

This demurrer the trial court sustained, and entered its judgment for the defendant and from such judgment the plaintiff has appealed. The cause was briefed and argued here both upon the merits, and upon the question of *res adjudicata*. Such sufficiently states the case.

I. In our judgment the present case is determined without a rediscussion of the merits of the cause. The present case, whilst here upon petition

and demurrer, is as if it were here upon all the original facts with an answer pleading former adjudication. The petition was evidently so drawn as to force this situation. It avers all the facts necessary to be set out in an answer pleading former adjudication, and the demurrer raises the issue by conceding the pleaded facts. The demurrer performs a further office by raising a clear issue of law, *i. e.*, that the petition upon its face shows a former adjudication of the cause of action stated, and for that reason discloses no right of action in the present case. We are, therefore, brought to the single question as to the force and effect of a simple judgment of reversal in an appellate court in a case where such court passed upon the entire cause, including both the law and the facts. The exact question is here for the first time. In all the history of the court, this is the first time a judgment of reversal in a case of this character has been treated as a nonsuit, and a suit reinstituted, carried to judgment and appealed to this court. It is therefore interesting because of its novelty, if for no other reason.

The question must turn somewhat upon our statutory provisions. The various statutes are:

Section 639, Revised Statutes 1899, which reads: "The plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterward."

Section 866, Revised Statutes 1899: "The Supreme Court, St. Louis Court of Appeals and Kansas City Court of Appeals, in appeals or writs of error shall examine the record and award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given, as to them shall seem agreeable to law; but it shall not be necessary, for the review of the action of any lower court on appeal or writ of error,

that the motion for a new trial, in arrest of judgment, or instructions filed in the lower court, shall be copied or set forth in the bill of exceptions filed in the lower court: Provided, the bill of exceptions so filed contains a direction to the clerk to copy same, and the same are so copied into the record sent up to the appellate court. When the facts in a special verdict are insufficiently found, they may remand the cause and order another trial to ascertain the facts."

Section 2868, Revised Statutes 1899: "Every action instituted by virtue of the preceding sections of this chapter shall be commenced within one year after the cause of such action shall accrue."

Laws of 1905, p. 138, enacted in lieu of section 2868, Revised Statutes 1899, read thus:    "Every action instituted by virtue of the preceding sections of this chapter shall be commenced within one year after the cause of such actions shall accrue:    Provided, that if any action shall have been commenced within the time prescribed in this section, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or after a judgment for him, the same be reversed on appeal or error, such plantiff may commence a new action, from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed."    Section 4285, Revised Statutes 1899: "If any action shall have been commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed; and if the cause of action survive or descend to his heirs, or survive to his executors or administrators, they may, in like manner, commence a new action within the time herein

allowed to such plaintiff, or, if no executor or administrator be qualified, then within one year after letters testamentary or of administration shall have been granted to him."

Section 4285, supra, appears under article 2 of chapter 48, which pertains to limitations of personal actions. The chapter contains two articles, one pertaining to limitations of real actions and the other to limitations of personal actions.

Section 2868, supra, appears in chapter 17, which is entitled, "Damages and Contributions in Actions of Tort," and the Amendment of 1905 would leave the amended section in the same chapter.

Sections 639 and 866 appear in chapter 8, entitled "Code of Civil Procedure." The first section mentioned is in article 5 of chapter 8, which article is entitled, "Pleadings, and the Rules of Pleadings," and the second section, supra, is in article 12 of chapter 8, and such article is entitled, "Practice in the Supreme Court and Courts of Appeals."

Such are the several statutory provisions involved in a discussion of the question.

It is immaterial in our judgment how we classify the case at bar. Plaintiff proceeded upon the theory that the case falls within the limitations as to time of bringing suit fixed by the Damage Act. She proceeded in the first case, as also in this case, upon the theory that her right of action would lapse unless suit was brought within a year from the death of her husband. We say that it is immaterial, because by an examination of section 4285 under the chapter pertaining to limitations of actions generally, and the Act of 1905 eliminating the old section 2868 of the Damage Act, and enacting a new section 2868 in lieu thereof, it will be observed that the saving clause of the general statute of limitations found in said section 4285, has been substantially transplanted to the Dam-

age Act by said Act of 1905, supra. [Clark v. Railroad, 219 Mo. l. c. 530.]

Discussing this saving clause added to the Damage Act by the Act of 1905, in the Clark case, supra, we said:

"There has long existed in our statutes (Chapter 48 on Limitations of Actions, art. 2, Personal Actions), a section containing a saving clause in case of a non; suit, and providing that a plaintiff 'may commence a new action from time to time, within one year after such nonsuit suffered.' [Sec. 4285.] This saving clause was substantially borrowed and used in the new section, 2868, supra, now part of chapter 17 on Damages and Contributions in Actions of Tort. But in said article 2, chapter 48, it is further provided as follows (sec. 4292): 'The provisions of this chapter shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute.'

"Proper construction of the last section precludes the idea that section 4285 applies to actions instituted for damages for torts under the Damage Act. This, because the Damage Act carries its own special Statute of Limitations, which must control. [Gerren v. Railroad, 60 Mo. 405; Wilson v. Knox Co., 132 Mo. 387; Davenport v. Hannibal, 120 Mo. 150; Revelle v. Railroad, 74 Mo. 438; Packard v. Railroad, 181 Mo. 421.] In the latter case it was held that a widow, nonsuited within the year, might sue again provided she instituted her suit within a year after the cause of action accrued, not within a year after nonsuit suffered. [McQuade v. Railroad, 200 Mo. l. c. 157.]

"It is practically conceded by counsel for appellant that unless section 2868, passed in 1905, applies to the case at bar, then the demurrer is well taken; for up to that time, as the law stood, there was no saving clause tolling the Statute of Limitations relating to damage suits grounded on torts, and permitting a

nonsuit and the institution of a new suit within one year after the nonsuit. It is conceded, too, that the Act of 1905 was passed to remedy the construction put on the Damage Act by Gerren v. Railroad, supra.''

In the Clark case, suit had been brought within the year but before the Act of 1905 was enacted. Pending the suit, the Act of 1905 was enacted and went into effect on June 16, 1905. On August 19, 1905, a nonsuit was taken, and thereafter, within a year after the nonsuit a new suit was filed. This second suit was more than one year after the cause of action accrued, but we reached the conclusion that section 2868 as enacted in 1905 applied, and the new suit was within time.

Upon this question, the present case is not more difficult. Here the original action was brought within the year, and the reversal was had long after the Act of 1905 became effective.

Section 866 simply provides for the character of judgments the appellate courts may render. Such courts, ''shall examine the record and'' (1) ''award a new trial'' (2) ''reverse'' the judgment, or (3) ''affirm'' the judgment, or (4) ''give such judgment as such court [meaning trial court] ought to have given.'' The awarding of a new trial of necessity requires the reversal of the judment, *nisi*. This section is of but little importance save as a side light.

The real question is the proper construction of the new section 2868 as enacted in 1905, when taken with section 639. Under such sections, in a case where this court has passed upon both the law and facts of a case and reversed the judgment, *nisi,* can the plaintiff bring and maintain a new suit, if brought within the year specified in section 2868? We think not, and for reasons which follow.

II. Inasmuch as our new section 2868 is in substance the same as section 4285, the history of the latter section becomes important. Section 4285 had

its origin in Laws of 1807. *Vide* Territorial Laws, vol. I, p. 144, sec. 2. In substance it has remained the same throughout. The original act read: "And provided also, if in any of the before mentioned cases any plaintiff obtains a judgment, which upon appeal or writ of error shall be reversed, or any plaintiff shall suffer a nonsuit, such plaintiff, his heirs, executors or administrators as the case may require, may commence a new action or suit from time to time, within one year after such judgment reversed or nonsuit suffered as aforesaid, and not after."

Thus throughout our existence as a State, and for years before, we have had this statutory provision, and yet this is the first time that this court has been called upon to meet the question here presented. It would seem singular that in all these years a case fully heard upon law and fact and reversed, was considered as ended, and yet when we transplant the same statute into the Damage Act a life of a different character would be thereby infused into it.

Plaintiff is not without some authority in this State, however. We are cited to the case of Donnell v. Wright, 199 Mo. l. c. 312, but this case does not help the plaintiff. There are some remarks made by the writer of that opinion which might lend color to plaintiff's claim, but this color is taken away by the following subsequent statement of Judge LAMM in that case: "In leaving this view of the matter, it should be said (to guard against misunderstanding) that the question is not here, and, therefore, we do not decide, that an opinion of this court holding plaintiff has no case at all on the facts and the law, which opinion is followed by a judgment of reversal only, leaves the identical issue on the identical facts open to reagitation in a new suit—it being meet to dispose of that question only when reached as a live matter in a live case, and not *obiter,* or by the by."

It is further eliminated as an authority, because it
appears that two of the judges only concurred in the
result of that case. Being one of the judges thus con-
curring in the result, it would not be improper to state
that this limited concurrence was made on the theory
that some *obiter* remarks in the opinion might be con-
strued as a holding of the court.

The question came up in the case of Musser v.
Harwood, 23 Mo. App. 495. Musser was the defend-
ant in the case of Robinson v. Musser, 78 Mo. 153,
which case simply reversed a judgment obtained by
Robinson against Musser. Robinson had given a bond
for costs, and the case of Musser v. Harwood was an
action on that bond. HALL, J., of the Kansas City
Court of Appeals, in discussing the question as to the
force and effect of our judgment of simple reversal,
said:

"The Supreme Court had the power to reverse
the judgment of the circuit court, and to render final
judgment in favor of the defendant in the case of
Robinson v. Musser; it had the power to reverse such
judgment and dismiss the petition in such case. [Gate-
wood v. Hart, 58 Mo. 261; Jenkins v. McCoy, 50 Mo.
348; McGee v. Larramore, 50 Mo. 425.]

"A reversal of the judgment and dismissal of the
petition by the Supreme Court would have been a final
determination of the case. Did the simple reversal
of the judgment, without remanding the case, have the
same effect? Both modes have been indiscriminately
used by all the appellate courts of this State in finally
determining cases. In the cases last cited the judg-
ments were reversed and the petitions dismissed.

"But in other cases to accomplish the same end
the judgments have been simply reversed and the cases
not remanded. In Bell v. Railroad, 86 Mo. 612, the
court held that the plaintiff had made no case and that
the defendant ought to have had judgment in the cir-

cuit court, and finally disposed of and determined the case by simply reversing the judgment. In Walden v. Dudley, 49 Mo. 422, the court held likewise, and simply reversed the judgment. And in Speak v. Dry Goods Co., 22 Mo. App. 122, the St. Louis Court of Appeals, by THOMPSON, J., said: 'The judgment will be reversed. The plaintiff has had his day in court, has failed to make out a case or to offer any evidence in contradiction of the evidence of the defendant, which is clear, consistent and entirely probable, and which shows that the plaintiff has no case. It does not, therefore, appear that the ends of justice will be served by remanding the cause. The judgment will be reversed merely. It is so ordered.' We quote the above language as so clearly showing the practice in this State in this respect. It would be an endless and fruitless task to discover and cite all the cases in our Reports, in which cases have been finally determined by our appellate courts by simply reversing the judgment. We are clearly of the opinion that the Supreme Court, by ordering simply the reversal of the judgment in the case under discussion, intended to, and did, finally determine it, as said court had the full power so to do.

"The judgment actually entered was a final judgment upon the merits, and was a complete bar to another suit on the same cause of action by the plaintiff, Robinson. The judgment of a simple reversal was entered in accordance with the opinion of the court, and, as has been said, it was intended to and did have the effect stated." In this opinion, PHILIPS, P. J., and ELLISON, J., concurred.

Later the Kansas City Court of Appeals dealt with the subject and overruled the Musser case, supra. [Lumber Co. v. Lumber Co., 72 Mo. App. l. c. 260.] In the Lumber Company case, SMITH, P. J., said: "The rule to be extracted from the foregoing authorities is that the simple reversal of a judgment without remanding will destroy its effect as an estoppel and

throw the whole matter open; restore the *status quo ante bellum.* And if the action was commenced within the period prescribed by the appropriate statute of limitations, the unsuccessful plaintiff may bring another action on his demand within a year after the reversal of his judgment, since such judgment is no bar thereto. We are unwilling to follow the rule declared in Musser v. Harwood, *ante,* in so far as the same is repugnant to that just stated. The prototype of this case, as seen by reference to the allegations of the petition hereinbefore set forth, was brought within five years after the cause of action accrued, and since this was brought within one year after the reversal of the judgment in the former, we must therefore resolve the preliminary question previously stated against the defendant's contention.'' The cases relied upon by Judge SMITH are: Berning v. Medart, 56 Mo. App. 443; Zurfluh v. Railroad, 46 Mo. App. 636; Briant v. Fudge, 63 Mo. 489; Shaw v. Pershing, 57 Mo. 416; Houts v. Shepherd, 79 Mo. 141; State v. O'Gorman, 75 Mo. 371.

A review of these cases will be of value. The Briant case was this: Hays, as sheriff of Cass county, had sold lands in partition and taken notes for the purchase money, dated April, 1860. Briant, the plaintiff in the case cited above, was a subsequent sheriff and was directed by the court to close up the said partition proceeding. The notes to Hays became due in 1862, but Hays went out of office about that time. By order of court, Dale, a sheriff between Hays and Briant, was directed to close up the partition proceedings. Dale brought suit and obtained judgment against Fudge and others in 1870, which judgment upon the motion of Fudge, filed in 1871, was set aside by the circuit court in July, 1872, because there had been no sufficient service on Fudge. This motion of Fudge had been served upon Briant, and before the motion was actually sustained, *i. e.,* on March 11, 1872, Briant

brought the suit which reached this court. Briant was defeated in the circuit court and sued out his writ of error in this court. By our decision, the cause was reversed and remanded. In the course of the opinion, NORTON, J., said: "From this state of facts the question arises, whether, notwithstanding the lapse of ten years from the time the cause of action accrued and the institution of this suit, the action can be maintained under section 19, p. 919, Wagner's Statutes. This is the only point presented for our consideration. The statute provides as follows: 'If any action shall have been commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a nonsuit, or after a verdict for him the judgment be arrested, or after a judgment for him the same be reversed, on appeal or writ of error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or judgment arrested or reversed.' It would seem to follow from the above that, on the arrest or reversal of the judgment rendered in the suit of Dale against the defendant, another suit might have been brought on the same cause of action, within one year after the arrest or reversal, even although ten years had elapsed. The intention of the Legislature, doubtless, was to give a party who should commence his action within the time prescribed as a bar to his recovery, and had, from any of the causes mentioned in the section, failed to succeed in his suit or obtain the benefit of a judgment, the right to renew or maintain a new action within the time specified." To our mind this case lends no support to the views announced by Judge SMITH. The facts of the case do not bring it within that clause of the statute relating to cases upon appeal.

The case of Shaw v. Pershing, supra, is not at all in point and does not even squint at the proposition. In that case it would appear that Shaw had first instituted his action in ejectment in the United States

Court before the expiration of the statutory period. In that court he suffered a nonsuit, and then within a year brought his suit in the State court. The defendant urged the Statute of Limitations. Our court simply held that the terms of our tolling statute were sufficiently broad to cover the case, and that inasmuch as action had been brought in the United States Court within time, and then reinstituted in the State court one year after nonsuit suffered, the Statute of Limitations did not bar the action.

Houts v. Shepherd, 79 Mo. 141, is also relied upon by Judge SMITH. That case is as far from the mark as is the Shaw case. The second syllabus properly states the case and our holding, and reads thus: "Within five years after the plaintiffs attained their majority they brought suit to set aside defendant's final settlement as administrator for fraud. In that action there was a nonsuit. Within one year thereafter this suit was brought. More than ten years had elapsed since the final settlement. *Held*, that this suit was not barred by the Statute of Limitations."

The facts and our holding in State ex rel. v. O'Gorman, 75 Mo. 370, are well stated in the third syllabus, which reads: "The statute which provides that a party who suffers a nonsuit in an action commenced within the time prescribed by the Statute of Limitations, shall have the right to commence a new action within one year, applies as well to voluntary as to involuntary nonsuits. [R. S. 1879, sec. 3239.]"

The foregoing are all the cases from this court cited by the learned judge in the Lumber Company case as the foundation for the holding therein made. The question at issue in the Lumber Company case was not at issue in either of these cases, and our opinions furnish absolutely no basis for the conclusion reached. There are also cited the cases of Atkison v. Dixon, 96 Mo. 582, and Crispen v. Hannovan, 86 Mo. 160, which simply hold that a judgment of a circuit

court which has been reversed by this court is a nullity. In the Atkison case, a judgment of the circuit court, which had been reversed by this court, was offered as evidence and rejected by the trial court. The parties were trying to establish the reasonable values of rents and profits on lands. This court thus disposes of the question: "On the trial, plaintiff offered in evidence the judgment rendered by the Bates County Circuit Court in 1876, in his favor against Louis Dixon, in which the monthly value of the premises in dispute was fixed at eight dollars. This evidence was objected to, the court sustained the objection and refused to receive it, and this action is claimed to be erroneous. The judgment thus offered was reversed by this court in the opinion reported in 70 Mo., supra, whereby the same became a nullity, and thereafter conferred no rights, and had no vitality for any purpose. [Crispen v. Hannovan, 86 Mo. 167-8; Freeman on Judg., sec. 481.] At the time said judgment was rendered Mrs. Dixon was not a party to the suit, and, as to her, the judgment was *res inter alios acta.* [Henry v. Woods, 77 Mo. 277.]" It will thus be seen that this case lends no light, and the Crispen case, supra, goes no further.

Judge SMITH, in the Lumber Company case, further relies upon two cases from the St. Louis Court of Appeals. The first is Zurfluh v. Ry. Co., 46 Mo. App. l. c. 642, whereat Judge BIGGS, who wrote the opinion, says: "We are, therefore, of the opinion that the plaintiff's instructions were not authorized by the evidence, and that the verdict and judgment were against the law and the evidence. The other questions presented by the briefs, we need not discuss. My associates concur in this opinion, but we differ as to the proper disposition of the case. They are of the opinion that the cause ought not to be remanded, but a simple order of reversal be entered. I understand their position to be that a simple reversal is not an adjudica-

tion on the merits, but is equivalent only to a nonsuit; that in the present case the plaintiff ought to have been nonsuited, as asked by the defendant, and that it is the duty of this court to make such judgment as the circuit court ought to have made. I think the proper practice is to remand a cause, unless the proof is such as to authorize this court to make a final judgment for the appellant.''

The second is Berning v. Medart, 56 Mo. App. l. c. 449, where ROMBAUER, P. J., said: ''The Supreme Court and this court have recently adopted the rule not to remand a cause for new trial where the plaintiff's evidence furnishes no substantial ground of recovery, unless it clearly appears that some hiatus in plaintiff's evidence may likely be supplied on a retrial of the cause in conformity with the true state of the facts. As the reversal of a judgment for plaintiff is equivalent to a nonsuit only, and the plaintiff is still at liberty to substantiate his recovery in a new action, if so advised, the rule works no hardship.''

Such are the cases relied upon by Judge SMITH in the Lumber Company case. In so far as the opinions from this court are concerned, none of these are in point.

In the later case of Ordelheide v. Wabash R. R. Co., 80 Mo. App. l. c. 368, the St. Louis Court of Appeals reversed the case without remanding it. Judge BIGGS filed a separate opinion and certified the case to this court. In so doing, he said: ''Upon this ground I concur in reversing the judgment, but I am of the opinion the case ought to be remanded. The rule of practice is that where an appellate court in an action at law reverses a judgment in favor of plaintiff, the cause will be remanded, unless it appears that all the facts have been proven, and that upon such facts the plaintiff could not possibly recover. [Gatewood v. Hart, 58 Mo. 261; Brown v. Bank, 5 Mo. App. 1; Berning v. Medart, 56 Mo. App. 443; Rutledge v.

Railroad, 123 Mo. l. c. 140.] In the Berning case, supra, we held that a cause should be remanded if it appeared that an hiatus in plaintiff's evidence might be supplied on a retrial. In the case here the plaintiff may be able on a retrial to show that the contract was entered into and the grain house built in aid of defendant's business as a common carrier, and that the house was intended to take the place of a freight-house at Wright City, which under the statute the defendant was compelled to build. If these are the facts, the house when built was within the protection of the statute, which rendered the defendant absolutely liable for its destruction. The ruling of my associates in refusing to remand the case is, in my opinion, opposed to the decisions in the foregoing cases. This rule of practice is an important one and in the disposition of causes it ought to be strictly observed. I therefore ask that the case be certified to the Supreme Court.'' When the case reached this court, 175 Mo. 337, it was decided without adverting to the question upon which it was certified to this court. We likewise reversed the cause.

In Stone v. United Workmen, 117 Mo. App. 297, the Kansas City Court of Appeals follows the ruling in the Lumber Company case.

Upon these cases, the plaintiff contends that a judgment of reversal is equivalent to a nonsuit. That it amounts to nothing more than a nonsuit, and that a new suit can be reinstituted within a year after such judgment. In the Berning case, supra, Judge ROM-BAUER does say that this court has said that a judgment of reversal was equivalent to a nonsuit, but he cites us to no case, and if it has been so held where the question was an issue, we have been unable to find the case.

Nor is it equivalent to a nonsuit. It is true that at common law the plaintiff could take a nonsuit at any time before verdict. [14 Cyc. 401.] But this rule

is modified by our statute, section 639, quoted supra, by which the nonsuit must be taken before the cause is submitted to the jury or to the court. A judgment of reversal comes after a submission. Not only so, but in many cases it comes after an investigation of both law and facts, and after a judicial conclusion has been reached as to the merits of the case. under the law and facts. When we consider section 639 along with section 2868, we cannot say that there is any similarity between a nonsuit and a judgment of reversal. Nor can we say, in all cases, that a judgment of reversal is equivalent to a judgment on either a voluntary or involuntary nonsuit.

In nonsuits there is no adjudication of the issues involved in the case, whereas in most of the cases wherein the appellate courts simply reverse the case, there has been an adjudication of the issues on the law and facts of the case. There might be cases wherein we could reverse the case without remanding, and yet leave the issues upon the merits untouched. Thus in McQuitty v. Wilhite, 218 Mo. 586, we reversed the case without remanding, and yet never passed upon the merits of the case at all. By the first count of her petition the plaintiff McQuitty sued the administrators of W. R. Wilhite, deceased, for the value of her services. In the second count, she sued for the specific performance of a contract to convey real estate. The trial court found against plaintiff on the first count, but she failed to appeal. But the trial court found for plaintiff on the second count and the administrators appealed. This judgment we reversed on the ground that plaintiff had sued the wrong parties. In other words, such action should have been against the heirs and not the administrators. We have no doubt in a case like this the plaintiff could sue again, but where upon appeal we examine the facts and apply the law, and reverse the case for the reason that plaintiff upon the merits is not entitled to re-

cover, such judgment of reversal is a finality. It ends the case for all time.

III.   What we have said in the closing sentences of the preceding paragraph is certainly the reasonable thing.   We should never give a statute an unreasonable construction.   The word "reversed" as used in section 4285 and in the new section 2868 should be construed to mean a reversal wherein the merits of the cause have not been adjudicated, as in the McQuitty case, supra.   If the statute is to receive the construction contended for by the plaintiff there would be no end to litigation.   The statute says, "Such plaintiff may commence a new action, from time to time, within one year after . . . such judgment . . . reversed."   This would mean, according to plaintiff's contention, that if the plaintiff was successful below and we reversed the judgment, she could bring the action over within one year, and if again successful before the jury, and we reversed that judgment, she could again bring it over and so on until such time as she might be defeated, *nisi*, or until we entered or directed a verdict for defendant.   It must be observed that the statute uses the words "from time to time" and if she can reinstitute her suit after one reversal, she can continue to so reinstitute it after each subsequent reversal.

By statute, we are authorized to enter judgments of simple reversal, and these judgments may or may not be finalities.   If the merits of the cases are adjudicated and passed upon they are final, but if not, they are not necessarily so.

So that considering the whole statute we are of opinion that a reasonable construction thereof precludes the plaintiff from again suing after a judgment of reversal in a case wherein the merits of the controversy have been investigated and adjudicated by the court, and this fact is one of easy determination.

In the case at bar, it is not claimed that the plaintiff is relying upon any new facts, but is relying upon the same facts adjudicated in the former case.

But if she had new facts, she has lost her opportunity. She might have asked for a modification of the judgment, as such has been permitted in some instances. Thus in Rutledge v. Railroad, 123 Mo. l. c. 140, this court thus spoke in an opinion on a motion to modify a judgment of reversal: "On motion to modify the judgment, it has been suggested that plaintiff may have a cause of action upon further proof that the signal on which the engineer acted, originated with the yardmaster. Plaintiff hence prays that the judgment be modified so as to remand the cause; and thus give him an opportunity to amend, and present that phase of the case to the trial court, the Statute of Limitations having intervened as against any new action he might bring. On consideration of this motion we are of opinion that it should be granted. [Bowen v. Railroad, 118 Mo. 541; Lilly v. Tobbein, 103 Mo. 477.] Accordingly the final judgment of this court will be that the judgment of the circuit court be reversed and the cause remanded."

It would appear that both plaintiff and the court in that case understood that the judgment of reversal was a finality, and unless modified no further action could be taken by plaintiff. Other cases of like tenor might be cited.

IV. But going a step further we are of opinion that this court has in effect refused to entertain the views urged by plaintiff. Thus in the case of Carroll v. Interstate Rapid Transit Co., 107 Mo. l. c. 664, BARCLAY, J., said: "My associates entertain a positive opinion that where (as here) it appears that, in every view of the facts, plaintiff has no right of action whatever, the cause should not be remanded for a new trial upon the reversal of an erroneous judgment. Many cogent reasons, no doubt, can be given for that opinion,

and it has the sanction of precedents, extending through many years. My personal impression has been that, where the trial court in an action at law, refuses to nonsuit, and we conclude that its ruling in that regard is erroneous, the cause should, on a reversal of the judgment, be remanded so that plaintiff might, if so advised, dismiss his action, or take a voluntary nonsuit, and thus avoid such effects as might possibly be held to flow from a plain judgment of reversal. Plaintiff would have the right to take such course in the circuit court before the latter could properly enter a final judgment against him. [R. S. 1889, sec. 2084; Lawrence v. Shreve, 26 Mo. 492.] And the reviewing power of this court extends no further in actions at law, than to pronounce such judgment as the trial court "ought to have given." [R. S. 1889, sec. 2304.] But this view of the subject has not met the approval of my colleagues and the point involved is not such as seems to demand further persistency on my part to maintain an individual opinion. Accordingly, the judgment of the circuit court is reversed, with the concurrence of all the judges of this division." We can but conclude from this that the court entertained the opinion that a judgment of reversal was a finality. At that time Judges SHERWOOD, BLACK, BRACE and BARCLAY constituted Division One of this court.

Later, the personnel of the court changed, and in the case of Keown v. Railroad, 141 Mo. l. c. 95, the question must have again come up, for Judge BARCLAY, who wrote the opinion in this case, as well as in the Carroll case, supra, concludes his opinion thus: "Conceding the full force of plaintiff's evidence, it does not tend to prove the essential fact of a breach of duty toward Keown. Whether submitted testimony tends to establish negligence is a question of law. Where the testimony does not have such tendency it is the duty of the court to so declare upon a proper request. The learned trial court should have given the instruc-

tion asked, denying plaintiff a recovery on the merits. It is hence unnecessary to go into an inquiry as to the alleged contributory negligence of Keown. The judgment is reversed, in which conclusion the writer concurs, referring to his observations in Carroll v. Transit Co., 107 Mo. 653, touching that disposition of cases of this sort. MACFARLANE, ROBINSON and BRACE, JJ., concur.''

It must be concluded that the court again discussed the character of the judgment to be entered, because Judge BARCLAY refers especially to his individual views in the Carroll case. In both of these cases, Judge BARCLAY was insisting upon remanding the cause so as to allow the plaintiff to take a nonsuit, but the other members of the court were evidently of the opinion that there were no merits in either case, and finally determined them by a simple judgment of reversal. Had it ever occurred to them that a judgment of reversal was tantamount to a nonsuit, they evidently would have answered Judge BARCLAY's insistence by so suggesting.

But beyond this, the vast number of cases which this court has disposed of by a simple judgment of reversal bespeaks the interpretation placed upon section 4285 at least. This section has been with us since the organization of the court. Section 2868, supra, is in words the same, so that the interpretation given to the one must be applied to the other. Counsel for defendant has industriously collated a great number of our cases wherein we have fully adjudicated the merits and entered a simple judgment of reversal. He has selected some opinions from every judge upon this bench in three or more decades. We shall not burden this opinion with a list of the cases, but they are causes wherein we have said that under the facts no recovery could be had and then entered a simple judgment of reversal. The curious can examine the

brief for the interesting collation of the cases both from this court and the several courts of appeals.

If the conduct of this court means anything, in view of the fact that section 4285 has been upon the Missouri Statutes since the Territorial days of 1807, it means that we have always understood that a simple reversal was the end of a case wherein we undertook to determine the merits of the controversy. And we now say that the statute under consideration in the case at bar should be so construed.

It follows from this, that Judge HALL, in the original case in this State, *i. e.*, Musser v. Harwood, 23 Mo. App. 495, was right when he said: "It would be an endless and fruitless task to discover and cite all the cases in our Reports, in which cases have been finally determined by our appellate courts by simply reversing the judgment. We are clearly of the opinion that the Supreme Court, by ordering simply the reversal of the judgment in the case under discussion, intended to, and did, finally determine it, as said court had the full power so to do." The doctrine of the Musser case we approve, and those differing therefrom, which we have elsewhere mentioned, should be and are overruled.

V. A thought or two more and we dismiss the subject, save and except to note some cases outside of Missouri cited by the plaintiff. An examination of our cases shows that we have indiscriminately used judgments of reversal, and judgments of reversal and dismissal of the petition.

For instance, in Gatewood v. Hart, 58 Mo. l. c. 265, we disposed of the case, thus: "The judgment is reversed, and as it is evident that a new trial could be of no avail to the plaintiffs, their petition will be dismissed; all the judges concur."

In Rutledge v. Railway Company, 123 Mo. l. c. 137, at the conclusion of the opinions written in Divis-

ion One, we used this language: "We hold that plaintiff's injuries cannot justly be ascribed to the want of such a rule as their juridical cause, and that the trial court should have given the defendant's instruction in the nature of a demurrer to the evidence. It follows that the judgment should be reversed (Carroll v. Transit Co., 107 Mo. 664), and it is so ordered."

Thus it will be observed that we have reached the same object, i. e., a disposition of the merits of the controversy through different wordings of our opinions and judgments. Other similar instances could be cited but these serve to illustrate.

There can be no doubt that a reversal of the judgment and a dismissal of the plaintiff's petition finally determines the cause. So too may the simple judgment of reversal, if it appear that the merits of the cause were submitted and adjudicated. What was held in judgment does not always appear from the judgment itself, but may be gathered from the pleadings and whole record of the case. In the case at bar it appears from the plaintiff's petition that we held in judgment at the prior hearing both law and facts and therefore the merits of the controversy.

VI. Plaintiff in addition to the cases in this State has cited us the following: Smith v. Adams, 130 U. S. 167; Gardner v. Railroad, 150 U. S. 349; Bucher v. Railroad, 125 U. S. 555; Spring Valley Coal Co. v. Patting, 210 Ill. 342; Railroad v. Bentz, 108 Tenn. 670.

The Smith case, supra, does not reach the question. Mr. Justice FIELD in discussing an incidental question in the case, used this language: "But there is a ground, not taken by the respondent, which forces itself upon our consideration, and that is, that the judgment of the Supreme Court of the Territory is not in form a final judgment. It not merely reversed the judgment of the district court, but remanded the

cause to that court for further proceedings according to law and the judgment of the appellate court. A judgment of a lower appellate court which reverses the judgment of the court of original jurisdiction, and remands the case to it for further proceedings, is not a final judgment. A judgment of reversal is only final when it also enters or directs the entry of a judgment which disposes of the case. On this ground, therefore, as well as on the previous ground, the appeal must be dismissed." This is every line in that opinion discussing the effect of a judgment and it will be observed that the judgment which Mr. Justice FIELD denominated not final, was a judgment wherein the judgment *nisi* had been *reversed* and the cause *remanded.*

In the Gardner case, supra, plaintiff had first sued in the State courts of Michigan. In the lower court of the State he recovered. This judgment was reversed by the Supreme Court, but the cause was remanded. Plaintiff then went to the lower court and took a non-suit, but thereafter brought his suit in the United States court. In the Federal court the defendant contended that plaintiff was estopped by the judgment of the Michigan court. This contention was disallowed because there had been no final judgment. This was clearly right, because the remanding of the case left it open for further proceedings, including a nonsuit, if plaintiff desired such.

The Bucher case, supra, is well stated in the first syllabus, which reads: "The plaintiff sued the defendants in a State court and recovered judgment. The highest appellate court of the State, reviewing the case, decided the points of law involved in it against the plaintiff, set aside the judgment for error in the ruling of the court below, and sent the case back for a new trial. The plaintiff then became nonsuit, and brought the present suit in the circuit court of the United States on the same cause of action. *Held,* that he was not estopped." The point is the same

as that in the Gardner case just adverted to, but neither of these cases refers in the least to the situation of the case we have at bar.

The Illinois case, supra, covers the same question as in the Bucher and Gardner cases. The first syllabus states the case, and reads: "A judgment by the United States Circuit Court of Appeals reversing a judgment of the United States Circuit Court in a personal injury case and remanding the cause for a new trial is not a final judgment, and, if followed by a nonsuit, cannot be pleaded as an estoppel in a subsequent suit in a State court on the same cause of action."

The Tennessee case, supra, is fully covered by the first syllabus, which reads: "Where the United States Circuit Court of Appeals reverses a judgment in favor of plaintiff, declaring that he has no right of recovery, even upon his own theory, under the law as administered by the Federal courts, and remands the cause for a new trial, and the plaintiff, thereupon, takes voluntary nonsuit and brings a new action in the State court, the decision of the Federal court is not conclusive, either as *res adjudicata* or as a declaration of the law of the case, upon plaintiff in the prosecution of his action in the State court, where a different view of the law applicable to the case prevails, under which he is entitled to recover."

It will be observed that in each of the five cases the judgment under discussion was one wherein the judgment *nisi* had not only been reversed, but the cause had been remanded. The cases are therefore absolutely foreign to the question at issue in this case. No one would contend that a judgment of this court which reversed the judgment *nisi* and remanded the cause would be a final judgment.

Later the plaintiff added to her brief the following cases: Spees v. Boggs, 204 Pa. St. 506; McOmber v. Chapman, 42 Mich. 117; Coffin v. Cottle, 16 Pick. 383;

Wooster v. Railroad, 71 N. Y. 473. As to these be it said that the statutes of the several states as to the character of judgments which appellate courts may render are so different that but little light can be gathered from the opinions without considering the statutes. Of these cases, when the statutes are considered, the Pennslyvania case is the only one which subserves the purposes of the plaintiff in this case, if in fact under all the statutory provisions of that State, that case should be considered in point.

After all, the question here, as in all States, is one which must be determined upon the statutory provisions, and the construction thereof, either tacit or explicit, given by the court.

We shall not consume further time and space. It follows from what has been said that the judgment of the lower court is right and should be affirmed. It is therefore ordered that the judgment be affirmed. All concur.